**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MICHAEL QUILES,**

    **Plaintiff,**

v.                                                                    **Case No: 6:24-cv-1610-PGB-DCI**

**CSX TRANSPORTATION, INC.,**

    **Defendant/**
    **Third-Party**
    **Plaintiff,**

v.

**FLORIDA DEPARTMENT OF TRANSPORTATION,**

    **Third-Party**
    **Defendant.**

## ORDER

This cause comes before the Court upon the following filings:

1. CSX Transportation, Inc.'s ("**CSX**") Motion to Dismiss Count I of Michael Quiles's ("**Quiles**") Complaint (Doc. 29), and Quiles's response thereto (Doc. 30).

2. Florida Department of Transportation's ("**FDOT**") Motion to Dismiss CSX's Third-Party Complaint (Doc. 52), and CSX's response thereto (Doc. 53).

Upon consideration, CSX's Motion to Dismiss is denied, and FDOT's Motion to Dismiss is granted in part and denied as moot in part.

I.   **BACKGROUND**[1]

In November 2021, Michael Quiles was hired by Prince Contracting, a construction contractor. (Doc. 1, ¶¶ 1, 5). During Quiles's employment, Prince Contracting ordered Quiles to work under CSX, a railroad transportation corporation. (*Id.* ¶¶ 1, 6–8). In supervising Quiles's employment, CSX possessed the ability to terminate Quiles. (*Id.* ¶ 8).

CSX assigned Quiles to work on the Central Florida Corridor railroad, which is owned by FDOT. (*Id.* ¶ 7; Doc. 40, ¶ 7). On June 6, 2022, CSX directed Quiles to remove brackets from a bridge using a two-man lift boom. (Doc. 1, ¶ 9). CSX told Quiles that it would provide a lookout to ensure trains did not enter the railroad. (*Id.* ¶¶ 10–11). However, while Quiles was working on the railroad, the provided lookout abandoned her post. (*Id.* ¶ 12). Subsequently, an incoming train struck the lift boom that Quiles was working on, which caused him to sustain injuries to his back, ribs, hips, and knee. (*Id.* ¶¶ 15–16). Following the collision, CSX directed Quiles to take a class led by CSX safety managers. (*Id.* ¶ 18). The CSX safety managers informed Quiles that he was a borrowed servant of the railroad while he was working on the railroad. (*Id.* ¶ 19). The CSX safety managers also told Quiles that CSX was supposed to provide safety devices, and that the lookout should not have abandoned her post under any circumstance. (*Id.* ¶¶ 20–21).

---

[1]   This account of the facts comes from Quiles's Complaint and CSX's Third-Party Complaint. (Docs. 1, 40). The Court accepts well-pled factual allegations therein as true when considering the motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007). The Court is not required to accept as true any legal conclusions couched as factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

2

Consequently, Quiles filed suit against CSX. (Doc. 1 (the "**Complaint**")). In the Complaint, Quiles pursues two counts: Count I under the Federal Employers Liability Act ("**FELA**") and Count II for negligence. (*Id.* ¶¶ 25–32). CSX moved to dismiss Count I of Quiles's Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 29).

Soon thereafter, CSX demanded indemnification from FDOT pursuant to the parties' Central Florida Operating and Management Agreement, which governs the area where the incident occurred. (Doc. 40, ¶¶ 7, 12; Doc. 40-2). Considering CSX was unsuccessful in its demand, it then filed a Third-Party Complaint against FDOT, alleging one count for a declaratory judgment. (Doc. 40, ¶¶ 12–14). Therein, CSX seeks a declaratory judgment regarding FDOT's indemnification duties under the parties' Central Florida Operating and Management Agreement. (*Id.*; Doc. 40-2). FDOT moved to dismiss Count I of the Third-Party Complaint under Federal Rule of Civil Procedure 12(b)(1). (Doc. 52). In the alternative, FDOT moved to dismiss the Third-Party Complaint under Rule 12(b)(6), or for a more definite statement under Rule 12(e). (*Id.* at p. 8).

The relevant Motions to Dismiss are fully briefed, and the matter is thus ripe for review. (Docs. 29, 30, 52, 53).

## II.   LEGAL STANDARD

### A.   Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a party may challenge subject matter jurisdiction on facial or factual grounds. *Carmichael v. Kellogg,*

*Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). For facial challenges, as here, courts look to the face of the complaint and determine whether the plaintiff sufficiently alleges standing. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys. Inc.*, 524 F.3d 1229, 1232–33 (11th Cir. 2008). In doing so, the court is limited to the complaint's allegations and exhibits, which the court must accept as true. *Id.* at 1232. Factual challenges, in contrast, allow courts "to consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael*, 572 F.3d at 1279.

### B. Failure to State a Claim

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Thus, to survive a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam). However, though a complaint need not contain detailed factual allegations, pleading mere legal conclusions, or "a formulaic

4

recitation of the elements of a cause of action," is not enough to satisfy the plausibility standard. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 679; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In sum, the court must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678–79.

## III. DISCUSSION

### A. CSX's Motion to Dismiss

In Count I, Quiles seeks to recover under FELA for CSX's alleged negligence. (Doc. 1, ¶¶ 25–28). CSX moves to dismiss Count I of Quiles's Complaint for failure to state a claim. (Doc. 29). Specifically, CSX asserts that Quiles fails to allege sufficient facts to demonstrate the first and second elements of a FELA claim. (*Id.* at p. 2).

FELA, 45 U.S.C. §§ 51–60, holds railroads liable to their employees for injuries "resulting in whole or in part from the negligence of the railroad." 45 U.S.C. § 51. To recover under FELA, a plaintiff must show:

> [1] that he was injured while in the scope of his employment, [2] which employment is in furtherance of the railroad's interstate transportation business, [3] that his employer was negligent, and [4] that his employer's negligence played some

5

      part in causing the injury for which compensation is sought under FELA.

*Green v. River Terminal Ry. Co.*, 763 F.2d 805, 808 (6th Cir. 1985) (internal citations omitted); *see also Brown v. CSX Transp., Inc.*, 18 F.3d 245, 249 (4th Cir. 1994).

    As to the first element, CSX contends that Quiles was not employed by CSX. (Doc. 29, p. 2). In support, CSX cites to *Kelley v. Southern Pacific Co.*, 419 U.S. 318, 326 (1974), where the Supreme Court addressed the scope of FELA's "while employed" language. (*Id.* at p. 3). Under *Kelley*, the test to determine employment for FELA purposes is "[t]he 'control or right to control' test." *Kelley*, 419 U.S. at 326. In unpacking this test in *Kelley*, the Supreme Court highlighted several cases to elicit the presence of control. *See id.*

    The *Kelley* court first considered *Robinson v. Baltimore & Ohio Railroad Co.*, 237 U.S. 84 (1915). In *Robinson*, the Supreme Court addressed whether the plaintiff, who was a porter for the Pullman Company and worked with Pullman railroad cars, was an employee of the railroad. *Id.* The *Robinson* court found that, because the Pullman company "defined their [porters'] duties, fixed and paid their wages, directed and supervised the performance of their tasks, and placed and removed them at its pleasure," the plaintiff was not an "employee" of the railroad. *Id.* at 492. The *Kelley* court then considered *Chicago, Rock Island, & Pacific Railway Co. v. Bond*, 240 U.S. 449 (1916), where the plaintiff, tasked with gathering wood and coal at a loading center, was not found to be an employee of the railroad. In *Chicago*, the court found the plaintiff to be an independent

contractor because although the railroad had some "control in a sense," it did not have a "detailed control of the actions" of the plaintiff. *Id.* at 456. Lastly, the *Kelley* court considered *Standard Oil Co. v. Anderson*, 212 U.S. 215 (1909), where the court clarified the distinction between a contractor and an employee. In *Standard Oil*, the Supreme Court "emphasized the importance of distinguishing between 'authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking.'" *Kelley*, 419 U.S. at 330 (citing *Standard Oil*, 212 U.S. at 222).

    Here, under the control or right to control test, Quiles sufficiently alleges that CSX had the right to control Quiles's performance—generally and at the time of the alleged incident. *See id.* at 318. First, CSX ordered Quiles to complete specific tasks and had the capacity to terminate Quiles. (Doc. 1, ¶¶ 7–8). Further, Quiles was supervised by, directed by, and reported to CSX personnel. (*Id.* ¶ 26); *see Chicago*, 240 U.S. at 455. Finally, CSX informed Quiles he was not under the control of Prince Contracting when he was working on the railroad. (Doc. 1, ¶ 26). These facts amount to CSX's control over Quiles, consistent with the standard set forth in *Kelley*. *See Kelley*, 419 U.S. at 318. Thus, Quiles alleges sufficient facts to support the first element of his FELA claim.

    With regard to the second element, CSX contends that Quiles "failed to allege his employment with CSX[] was in furtherance of interstate commerce." (Doc. 29, p. 2). In response, Quiles asserts that he satisfies this element by showing

that the railroad engages in interstate commerce. (Doc. 30, p. 7). Neither articulation wholly captures FELA's scope. Rather, FELA provides that:

> Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter.

45 U.S.C. § 51. Thus, "the true test of employment in such [interstate] commerce in the sense intended is, [w]as the employee, at the time of the injury, engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?" *Shanks v. Del., L. & W. R.R. Co.*, 239 U.S. 556, 558 (1916).

The Supreme Court has applied this standard, for employment in interstate commerce, to a variety of circumstances. In *Shanks,* the Court considered a plaintiff who was injured while working in a machine shop repairing locomotive parts. *See id.* at 556. The *Shanks* court reasoned that, "repairing or keeping in usable condition a roadbed, bridge, engine, car, or other instrument then in use in such [interstate] transportation" would satisfy the standard for employment in interstate commerce. *Id.* at 560. However, the plaintiff's work in *Shanks* was too remotely connected to such repairs to fall within the scope of FELA. *See id.* In *Pedersen v. Delaware, Lackwanna, & Western Railroad Co.*, 229 U.S. 146 (1913), the plaintiff was a worker struck by a train while retrieving bolts to repair a bridge used in interstate transportation. The *Pedersen* court held that, considering repair work on the instrumentalities of interstate commerce "is so closely related to such

8

commerce as to be in practice and in legal contemplation a part of it," the plaintiff was sufficiently acting within the scope of interstate transportation. *Id.* at 649.

Here, Plaintiff has sufficiently alleged that Quiles's employment was in furtherance of CSX's business of interstate railroad transportation. (*See* Doc. 1). Unlike *Shanks*, where the plaintiff was working in a shop away from the railroad, Quiles was working directly on the railroad. (*See id.* ¶¶ 9–10). Specifically, "CSX ordered Quiles to remove brackets from a bridge using a two-man lift [and] Quiles did as he was instructed, climbing into the basket, setting onto the track and beginning to work." (*Id.*). Further, like *Pedersen*, where the plaintiff was repairing a bridge used in interstate transportation, Quiles was working on a railroad in this district, which CSX operates in interstate commerce. (*Id.* ¶ 2). As such, Quiles sufficiently alleges he performed work that furthered CSX's interstate transportation business.

Ultimately, Quiles alleges sufficient facts to satisfy the first and second elements required for his FELA claim. Thus, CSX's request that the Court dismiss Count I of the Complaint is denied.

### B.   FDOT's Motion to Dismiss

In Count I of the Third-Party Complaint, CSX seeks a declaratory judgment against FDOT regarding the parties' Central Florida Operating and Management Agreement. (Doc. 40, ¶¶ 13–14). FDOT moves to dismiss CSX's Third-Party Complaint with prejudice for lack of subject matter jurisdiction under Rule 12(b)(1). (Doc. 52). FDOT asserts that, absent a relevant exception, the Eleventh

Amendment prevents federal courts from entertaining suits by private parties against state agencies. (*Id.* at p. 5). In the alternative, FDOT moves to dismiss CSX's Third-Party Complaint under Rule 12(b)(6), or moves for a more definite statement under Rule 12(e). (*Id.* at p. 8).

The Eleventh Amendment of the United States Constitution provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced on or prosecuted against on one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. While the text of the amendment does not explicitly so provide, the Supreme Court has held that a state is immune from suits brought by its own citizens in federal court. *Hans v. Louisiana*, 134 U.S. 1 (1890). Accordingly, states are immune from suits brought by private parties in "federal court unless a state has waived its sovereign immunity or Congress has abrogated it." *Cassady v. Hall*, 892 F.3d 1150, 1152–53 (11th Cir. 2018) (citing *Nichols v. Ala. State Bar*, 815 F.3d 726, 731 (11th Cir. 2016)). This immunity applies to "state agencies and other arms of the state." *Id.* (citing *Robinson v. Ga. Dep't of Transp.*, 966 F.2d 637, 638–40 (11th Cir. 1992)).

FDOT, a Florida state agency, does not assert congressional abrogation, and thus, the question is whether FDOT has waived its immunity. *Am. Contractors Indem. Co. v. Regis S., Inc.*, No. 6:20-CV-1691-ORL-31-EJK, 2020 WL 9073335, at *2 (M.D. Fla. Nov. 18, 2020). Such a waiver exists "only if there is 'an unequivocal indication that the state intends to consent to federal jurisdiction that

would otherwise be barred by the Eleventh Amendment.'" *Id.* (citing *Robinson*, 966 F.2d at 640). Thus, any finding of consent must be clear and obvious, and may not be found by mere inference. *See Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990).

Here, there are no allegations FDOT unequivocally consented to federal jurisdiction. (*See* Doc. 40). Rather, CSX relies upon *Florida Department of Transportation v. Schwefringhaus*, 188 So. 3d 840 (Fla. 2016), and *Pan-Am Tobacco Corp. v. Department of Corrections*, 471 So. 2d 4, 5 (Fla. 1984), to posit that "Florida courts have previously held these actions are proper and not subject to sovereign immunity defenses." (Doc. 53, p. 5). However, "[t]he Eleventh Circuit has held that this state court waiver does not extend to Florida's Eleventh Amendment sovereign immunity." *Am. Contractors*, 2020 WL 9073335, at *2 (citing *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287–88 (11th Cir. 2003)). Thus, CSX's reliance on *Schwefringhaus* and *Pan-Am*, both state court cases, does not support a waiver of consent for suit in federal court.

As such, the Court lacks subject matter jurisdiction over CSX's Third-Party Complaint pursuant to the Eleventh Amendment. FDOT's motion to dismiss is thus granted in part to the extent CSX's Third-Party Complaint is dismissed without prejudice. *See McQueary v. Child Support Enf't*, 812 F. App'x 911, 914 (11th Cir. 2020) (noting that orders granting a motion to dismiss for lack of subject

matter jurisdiction are to do so without prejudice).[2] Consequently, FDOT's requests in the alternative, under Rule 12(b)(6) and Rule 12(e), are denied as moot.

## IV. CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. CSX Transportation, Inc.'s Motion to Dismiss Count I of Michael Quiles's Complaint (Doc. 29) is **DENIED**.

2. Florida Department of Transportation's Motion to Dismiss CSX's Third-Party Complaint (Doc. 52) is **GRANTED IN PART** for lack of subject matter jurisdiction and **DENIED AS MOOT** in all other respects. CSX's Third-Party Complaint (Doc. 40) is **DISMISSED WITHOUT PREJUDICE**. The Clerk of Court is **DIRECTED** to terminate Florida Department of Transportation as a party.

**DONE AND ORDERED** in Orlando, Florida on August 18, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[2] "Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive." *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 (11th Cir. 2018).