**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MICHAEL QUILES,

        **Plaintiff,**

v.                                **Case No: 6:24-cv-1610-PGB-DCI**

CSX TRANSPORTATION, INC.,

        **Defendant.**

---

**ORDER**

This matter comes before the Court on Plaintiff's Motion to Compel. Doc. 90 (the Motion).

Upon review, the Motion is due to be **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Plaintiff Michael Quiles (Quiles) commenced this action in September 2024. Doc. 1. On

July 31, 2025, Quiles filed an Unopposed Renewed Motion to Extend Case Deadlines. Doc. 56.

In that motion, Quiles represented that:

> Plaintiff has not yet received discovery from Defendant that Plaintiff
> will require for expert disclosures and will not receive it until after
> the current deadline. This is in part because Defendant required an
> extension of time to provide that discovery. Absent an extension of
> case deadlines, Plaintiff will be greatly prejudiced in his ability to
> present his case.

Doc. 56 at 2. Quiles also proposed an amended schedule for the Court's consideration, with a

proposed discovery deadline of December 5, 2025. *Id.* at 3. The Court granted the unopposed

motion (Doc. 57) and issued an amended case management and scheduling order the very next

day. Doc. 58. The Court set a discovery deadline of December 1, 2025. *Id.* at 1. Approximately

two weeks before the discovery deadline, Quiles filed a motion to compel discovery. Doc. 64.

The Court struck that motion for failure to comply with the standing order on discovery motions. Doc. 68.[1]

With just one week left before the close of discovery, Quiles filed a compliant motion. Doc. 70 (the Initial Motion to Compel). In the Initial Motion to Compel, Quiles sought an order compelling Defendant CSX Transportation, Inc. (CSX) "to search for and produce documents responsive to Plaintiff's Requests for Production Nos. 1, 2, 3, and 6, including documents CSX has improperly withheld based on unsubstantiated claims of privilege." Doc. 70 at 1. CSX filed a response the following day and asserted that: "CSXT has fully complied with its discovery obligations"; "Plaintiff's requests encompass privilege communications between defense counsel and CSXT"; "Any post-accident investigations or written statements are protected pursuant to the work-product doctrine"; and "Plaintiff has not demonstrated a substantial need for the privileged materials or an inability to obtain their substantial equivalent by other means." Doc. 71. On December 1, 2025, Quiles also filed a motion to extend the discovery deadline. Doc. 72. CSX opposed that motion (Doc. 74) which remains pending.

On January 14, 2026, the Court held a hearing on the Initial Motion to Compel where it heard arguments from both parties. Doc. 85. The same day, the Court ordered as follows:

> 1. The Motion (Doc. 70) is GRANTED in part such that CSX's objection to Request for Production No. 1 is stricken as boilerplate. However, **the Court accepts CSX's representation that it has no responsive documents to Request No. 1**.
>
> 2. The Motion (Doc. 70) is **DENIED in part to the extent that Quiles requests that CSX be ordered to make additional searches or produce additional documents in relation to Request Nos. 2, 3, and 6**, except as related to the documents on the amended privilege log provided to the Court at the hearing.

---

[1] Quiles initially filed a 21-page motion to compel. The standing order on discovery motions limits parties to filing a 500-word motion whenever there may be a discovery dispute. Doc. 12 at 1.

> 3. The Motion (Doc. 70) is DENIED in part without prejudice to allow Quiles to file an amended motion with full briefing as it relates to the documents on CSX's privilege log. As to those documents on the privilege log:
>
>> a. On or before January 15, 2026 at 5:00 pm, CSX shall provide Quiles with an amended privilege log including the following elements for each entry: author's name, author's job title, and the name of any person (including that person's employer and job title) and entity with whom the document was shared; and
>>
>> b. To the extent any disputes remain **concerning the documents included in the amended privilege log,** on or before January 21, 2026, **Quiles may file an amended motion to compel** in accordance with Local Rule 3.01(b) and (g).1 CSX may file a response in accordance with Local Rule 3.01(c) and (d).

Doc. 86 at 2 (emphasis added). In short, the Court denied Quiles' request to require CSX to search for or produce additional documents. The Court ordered CSX to prepare an amended privilege log and gave Quiles leave to file an amended motion to compel should any dispute remain as to the documents included in the amended privilege log.

Quiles then filed the instant motion compel. Doc. 90 (the Motion). In the Motion, Quiles seeks an order compelling "CSX to search for and produce documents responsive to Plaintiff's Requests for Production Nos. 2, 3, and 6, including all documents CSX has improperly withheld based on unsubstantiated claims of privilege." *Id.* at 90.[2] CSX responds that, "The motion should be denied because: (1) CSXT properly objected to the requests; (2) contrary to Plaintiff's

---

[2] The instant Motion is nearly identical to the previously stricken motion to compel. *Compare* Doc. 64 *with* Doc. 90. It appears that Quiles made a few minor changes to the stricken motion and re-filed it. Accordingly, many of Quiles' arguments appear disjointed from recent and pertinent events in the case—namely, the January 14, 2026 hearing, CSX's filing of the amended privilege log, and the Court's post-hearing order granting leave to file an amended motion to compel only "[t]o the extent any disputes remain concerning the documents included in the amended privilege log." Doc. 86 at 2. The Court will only address those arguments related to the amended privilege log. Indeed, many of the issues raised in the Motion were resolved at the hearing, and Quiles fails to cite, let alone meet, the standard for reconsideration of those prior rulings.

3

assertions, CSXT conducted a reasonable search and produced all non-privileged responsive documents in its possession; and (3) this Court has already denied Plaintiff's request for CSX to conduct additional searches or produce further documents related to Requests Nos. 2, 3, and 6. [D.E. 89]. Plaintiff also fails to demonstrate any waiver of privilege or that a substantial need and undue hardship overcomes the work product protection in the instant case." Doc. 92 at 1-2 (the Response). The matter is now ripe for review.

## II.     LEGAL STANDARD

"[D]istrict courts are entitled to broad discretion in managing pretrial discovery matters," *Perez v. Miami–Dade Cnty.*, 297 F.3d 1255, 1263 (11th Cir. 2002); *see also Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir.2011). This discretion includes ruling on the applicability of the work product doctrine. *See, e.g., United Kingdom v. United States*, 238 F.3d 1312, 1321 (11th Cir.2001) (holding that "the district court did not abuse its discretion by declining to order the production of the Government's confidential work product"); *see also Bradley v. King*, 556 F.3d 1225, 1229 (11th Cir. 2009) ("A district court has wide discretion in discovery matters and our review is accordingly deferential." (internal quotation marks omitted)).

The burden of establishing that the work product doctrine protects potential discovery lies with the party asserting the protection. *CSX Transp., Inc. v. Admiral Ins. Co.*, 1995 U.S. Dist. LEXIS 22359, at *4 (M.D. Fla. July 20, 1995). This burden can be met only by an evidentiary showing based on competent evidence; "the mere conclusory assertion that material sought is covered by . . . work product privilege is not sufficient to render such material undiscoverable." *Ameritrust Co., N.A. v. White*, Civ. No. 1:90-CV-2691-JEC, 1993 WL 819124, *3 (N.D. Ga. Oct. 20, 1993). A party objecting to production on the grounds of privilege, including work product privilege, must produce a privilege log. Federal Rule of Civil Procedure 26 provides:

4

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Fed. R. Civ. P. 26(b)(5). To preserve the privilege, the objecting party must provide a log or index of withheld materials that includes, for each separate document, the authors and their capacities, the recipients (including copy recipients) and their capacities, the subject matter of the document, the purpose for its production, and a detailed, specific explanation of why the document is privileged or immune from discovery. *See Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g*, 230 F.R.D. 688, 695 (M.D. Fla. 2005).

Claims of work product "immunity" or "privilege" are governed by the principles set out in Rule 26(b)(3), which states in pertinent part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3).

In determining whether documents were prepared "in anticipation of litigation," the law is clear that if documents are prepared for a business purpose – or for some other non-litigation purpose – they fall outside the protection of the work product doctrine. *See, e.g., Johnson v. Westgate Vacation Villas, LLC*, 2018 WL 7461685, at *3 (M.D. Fla. Oct. 23, 2018). At bottom,

5

the question becomes whether the purportedly privileged documents were prepared with the "primary motivating purpose" of aiding in possible litigation. *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981). Additionally, "[i]n determining whether a document was prepared in anticipation of litigation, key issues the court must consider are the function the document serves, the circumstances surrounding its creation, and the driving force behind its preparation." *Trenary v. Busch Entm't Corp.*, 2006 U.S. Dist. LEXIS 70584, at *5-6 (M.D. Fla. Sept. 28, 2006).

If the work product privilege applies, then the burden shifts to the party seeking disclosure to demonstrate that the materials are discoverable under Rule 26(b)(1) because there is a "substantial need" or the movant cannot obtain the substantial equivalent without "undue hardship." *Batchelor v. Geico Cas. Co.*, 2014 U.S. Dist. LEXIS 104992, at *9 (M.D. Fla. June 4, 2014).

## III.    DISCUSSION

The only matter properly before the Court is Quiles' request to compel production of the items listed in CSX's amended privilege log. Docs. 90 at 16-24; 91-7. CSX claims these items are subject to work product and "self-critical analysis" privileges. Doc. 91-7. Quiles contends that these privileges do not apply, but even if they did, any privilege is overcome by Quiles' substantial need. Doc. 90 at 16-24. CSX responds that the work product privilege is properly asserted and that Quiles has not demonstrated a substantial need to overcome that privilege.[3] Upon

---

[3] CSX appears to have abandoned the "self-critical analysis" privilege by only defending the work product privilege in the Response. *See generally*, Doc. 92 (referencing "self-critical analysis" only three times, in block quotes from CSX's objections to Quiles' requests for production; aside from these quotations, the Response does not otherwise reference the self-critical analysis privilege). Accordingly, the Court will only consider the applicability of the work product privilege. Regardless, CSX has not identified—nor has the Court found—any binding precedent recognizing the existence of a "self-critical analysis" privilege. *See, e.g., Bonnell v. Carnival Corp.*, No. 13-22265-CIV, 2014 WL 10979823 (S.D. Fla. Jan. 31, 2014) (noting that "the Eleventh Circuit has yet to recognize the self-critical analysis privilege"); *see also Harvard v. Inch, No. 4:19CV212-*

review, the Court finds that the work product privilege applies to the items in the amended privilege log, but Quiles' substantial need overcomes the privilege with respect to the witness statements of Charles Brown and J.L. Gary and any contemporaneous photographs of the accident scene and equipment.

### A.    Work Product Privilege

The amended privilege log includes the following five entries:

| No. | Description | Date | Author | Shared With |
|---|---|---|---|---|
| 1 | Charles Brown's Written Statement | 6/6/2022 | Charles Brown, Conductor | Defense Counsel; CSXT Claims Department; Manager of Field Investigations; Field Investigations Analyst |
| 2 | J.L. Gary's Written Statement | 6/6/2022 | J.L. Gary, Engineer | |
| 3 | CSX PSCC Incident Report (two pages with seven photographs of manlift and locomotive) | 6/6/2022 | Traci Harris, Manager of Train Operations.

The incident was added by Alyson Trouba, PSCC Specialist and updated by Sean Reid, Manager of Emergency Preparedness and Training | |
| 4 | Incident Record Report | 6/6/2022 | Tuesdi Sweatt – Director of Accident Reporting and Compliance | |
| 5 | Railroad Accident Reporting (x3, two pages each) | 6/6/2022 and 6/13/2022 | Denise Lynch, Manager of Field Investigations

Vicki Stewart Johnson, Accident Reporting Specialist

Traci Harris, Manager of Train Operations. | |

---

*MW/CAS*, 2020 WL 701990, at *8 (N.D. Fla. Feb. 7, 2020) ("Defendants have the burden to establish self-critical analysis privilege.") (citation omitted).

*See* Doc. 91-7. Quiles contends that the work product privilege does not apply to any of these entries and, alternatively, that the privilege is overcome by substantial need. Doc. 90 at 21-22. In the Response, CSX describes these items as "internal incident reports and witness statements" and contends that they are work product "generated as part of its investigation of the subject incident in anticipation of litigation." Doc. 92 at 13. In support, CSX Field Investigations Analyst Jacob Underwood provided an affidavit stating the following:

> 4. These incident reports and photographs are routinely prepared by CSXT employees as part of their standard operating procedures, however, their primary purpose is to assist CSXT's claims department and defense counsel in litigation. When an accident occurs, CSXT routinely faces lawsuits related to such incidents.
>
> 5. The preparation of any reports, photographs, and witness statements are conducted at the direction of CSXT's legal counsel to ensure that they are properly documented for potential legal proceedings.

Doc. 92-6 at 2.

The Court addresses whether to compel each category of materials—incident reports, written witness statements, and photographs—in turn.

### 1.    Incident Reports

First, the Court finds that the three incident reports constitute work product. Courts have recognized that "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the [work product] doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." *United States v. Nobles*, 422 U.S. 225, 238-39 (1975). Accident or incident reports prepared as part of an incident investigation fall within the work-product doctrine where they are created at the advice of counsel. *See e.g., Meyer v. NCL (Bahamas), Ltd.*, 2017 WL

8

3396410, at *4 (S.D. Fla. Aug. 8, 2017) (holding that incident report prepared by cruise ship personnel was prepared in anticipation of litigation); *see also Bridgewater v. Carnival Corp.*, 286 F.R.D. 636 (S.D. Fla. 2011) (finding that an accident report constituted work product where it was a directed collection of information geared toward defending potential claims).  In *Fojtasek*, the court held that an incident report regarding a cruise ship passenger's death was protected work product where the cruise line established that such reports were prepared pursuant to a policy implemented on the advice of counsel in anticipation of litigation.  *Fojtasek v. NCL (Bahamas) Ltd.*, 262 F.R.D. 650, 655-56 (S.D. Fla. 2009) (noting that "the NCL policy, as determined by NCL's legal counsel, required that the tour operator prepare and submit a report to NCL in anticipation of litigation").

Here, CSX represents that the reports at issue were generated as part of its post-incident investigation pursuant to procedures implemented in anticipation of litigation.  Doc. 92-6 at 2 ("The preparation of any reports, photographs, and witness statements are conducted at the direction of CSXT's legal counsel to ensure that they are properly documented for potential legal proceedings").  Like the plaintiff in *Fojtasek*, Quiles has "not refuted" that the reports were prepared for this purpose nor has he suggested some other reason CSX might have had to prepare these reports.  And a review of the amended privilege log reveals that the authors of the reports worked for CSX in the following capacities: compliance, investigations, operations, and emergency preparedness.  Doc. 91-7 at 2-3 (listing the following CSX employees as authors of the reports: Traci Harris (Manager of Train Operations), Alyson Trouba (PSCC Specialist), Sean Reid (Manager of Emergency Preparedness and Training), Tuesdi Sweatt (Director of Accident Reporting and Compliance), and Denise Lynch (Manager of Field Investigations)).  Lastly, the dates on the reports reflect that they were prepared the day of the incident, with one report finalized

9

a week later.  Doc. 1 at 2 (alleging that the incident took place on June 6, 2022); Doc. 91-7 (amended privilege log lists reports as dated June 6, 2022).  On this record, the Court is satisfied that the reports were in anticipation of litigation and therefore fall within Rule 26(b)(3)'s definition of work product.

Quiles has not meaningfully briefed any argument that the CSX reports are not work product nor demonstrated substantial need or undue hardship sufficient to overcome the privilege.  *See generally*, Doc. 90.  Quiles does not explain why the information contained in the reports cannot be obtained through other discovery methods, including depositions of the individuals involved in the incident.  *Id*.  Accordingly, the motion to compel should be denied with respect to the production of the incident reports.

### 2.    Witness Statements

Quiles also seeks written witness statements obtained from members of CSX's crew who were present at the time of the incident—Charles Brown and J.L. Gary.  The Court concludes that the witness statements likewise constitute protected fact work product, nevertheless, Quiles has made a showing of substantial need and undue hardship sufficient to overcome the privilege.

As a general matter, courts have held that statements taken from witnesses by a party or its agents during an investigation conducted in anticipation of litigation fall within the work-product doctrine.  *See Bridgewater*, 286 F.R.D. at 643 (noting that a witness statement taken by a party's attorney or agent in anticipation of litigation is protected work product); *Meyer*, 2017 WL 3396410, at *4 (finding witness statements taken by a party's personnel are protected work-product).  But Quiles contends that some courts have treated narrative statements in a witness's own handwriting differently and concluded that such statements are not work product.  *See Collazo v. Carnival Corp.*, No. 23-CV-23451, 2024 WL 2752431, at *5 (S.D. Fla. May 24, 2024) (noting

10

that *Bridgewater* "does not differentiate between statements written by a party's attorney or agent and those filled out with factual information by the witness in his or her own handwriting"). In the response, CSX distinguished *Collazo* by pointing out that "the statements were taken from unrelated injured passengers who were not involved in the related case, were not prepared to aid in the investigation of the subject incident and were prepared on a form with pre-marked questions." Doc. 92 at 14-15. The points are well taken, as here the witnesses who wrote the statements are also CSX employees. Considering the weight of authority on the matter, and the lack of case law addressing instances where the witness who authored the statement is also an employee of a party, the undersigned is inclined to find that the witness statements do constitute work product.

Nevertheless, the Court finds that Quiles has demonstrated substantial need and undue hardship to overcome the work product privilege. *See Batchelor v. Geico Cas. Co.*, No. 6:11-CV-1071-ORL, 2014 WL 3697682, at *4 (M.D. Fla. June 4, 2014) (work product materials may be discoverable if: "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means"). Quiles asserts that he has a substantial need for the witness statements because "only CSX knows what caused its train to strike Quiles, and there are not other sources of information available to Plaintiff at this point—certainly no other contemporaneous sources." Doc. 90 at 23. Further, Quiles made clear at the January 14, 2026 hearing that he is seeking the witness statements of Charles Brown and J.L. Gary. Docs. 84, 90. The Court is inclined to agree with Quiles that the written statements of the crew operating the train involved the accident would be critical to Quiles' case—particularly where Quiles was transported directly to the hospital from the scene.

11

The Court also finds that Quiles has demonstrated undue hardship in obtaining the substantial equivalent of the Charles Brown and J.L. Gary witness statements. CSX contends that "Plaintiff had the opportunity to depose relevant witnesses, including employees he mistakenly believed were CSXT's, as well as the dozens of individuals identified in the Bombardier Report. *See* Ex. A. Despite this opportunity, Plaintiff elected not to do so." Doc. 92 at 19. And while it is true that courts have denied discovery of employee witness statements where the requesting party can obtain the information by deposing the same witnesses, Quiles *has* deposed Charles Brown and J.L. Gary. Docs. 91-10 (excerpt of Charles Brown deposition), 92-2 (excerpt of J.L. Gary deposition); s*ee Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1467 (11th Cir. 1984) ("Appellee's claim apparently rests on the alleged undue hardship of procuring the information it seeks in any other manner. There has been no showing, however, that appellee could not obtain that information by deposing the very same witnesses"). At the January 14 hearing, Quiles explained that the witnesses largely could not recall the events of June 6, 2022. CSX has not meaningfully contended with this assertion. Given that Quiles' legal team has already deposed the witnesses—who in large part did not recall the events—and has no other way of obtaining the substantial equivalent of their contemporaneous narrative of events leading up to the incident, the Court agrees that undue hardship exists.

Accordingly, the motion to compel production of the written witness statements should be granted.

### 3.    Photographs

Quiles also seeks production of the photographs CSX included in its reports. Doc. 90 at 17, 22. The Court agrees with CSX that these photographs were taken as part of the post-incident investigation and therefore constitute work product. Doc. 92 at 18-19. Nevertheless, the Court

12

concludes that Quiles has demonstrated the substantial need and undue hardship required to obtain them.

Photographs taken at or near the time of an accident often constitute unique factual evidence depicting the objective condition of the scene at the relevant time. Courts have recognized that such depictions may be discoverable because they capture information that cannot later be recreated or sufficiently described in a deposition. *See Reedy v. Lull Engineering Co., Inc.*, 137 F.R.D. 405, at 407 (M.D. Fla. 1991) ("Plaintiffs' argument that deposing witnesses who were present at the scene would provide the same information about the condition of the accident site and equipment to the defendant is unpersuasive. It is doubtful that those individuals, two and one-half years later, would be able to recall the same detailed information about the condition of the site and equipment at the time of an accident which a photograph or videotape would provide."). Quiles alleges that he sustained injuries to "his back, ribs, hip and knee" when a train collided with a lift Quiles was working in. Doc. 1 at 2. Accordingly, the undersigned is doubtful that Quiles had the opportunity to photograph or otherwise document the condition of the accident scene or the equipment involved. And although Quiles may have some photographs of the scene from the Bombardier Report, CSX contends only that the Bombardier photographs are "reasonably equivalent" and does not otherwise dispute the assertion that Quiles may glean additional information from the Bombardier photographs that would be unavailable elsewhere. Lastly, as explained in *Reedy*, it is "doubtful" that a deposed witness would be able to recall the same detailed information about the condition of an accident site that a photograph would provide. *Reedy*, 137 F.R.D. at 407.

Under these circumstances, Quiles has demonstrated both a substantial need for the photographs and an undue hardship. Accordingly, the motion to compel production of the photographs should be granted.

### IV.    CONCLUSION

Accordingly, it is **ORDERED** that:

1.  The Motion (Doc. 90) is **GRANTED in part** such that **on or before March 19, 2026**, CSX shall produce to Quiles:

    a.  any photographs—including any photographs contained within reports— identified in the amended privilege log and withheld for work product privilege; and

    b.  the hand-written witness statements of Charles Brown and J.L. Gary.

2.  The Motion (Doc. 90) is otherwise **DENIED.**

**ORDERED** in Orlando, Florida on March 12, 2026.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record